## THE AMERICAN EXPRESS COMPANY

*v.*

## ROBERT GREENHALGH.

1. COMMON CARRIER — *to whom goods should be delivered.* A common carrier may usually deliver goods to the consignee on the terms specified, or if refused by the consignee, he may return them to the consignor, or if the title has changed after receiving them, or if neither the consignor nor the consignee had title to the property when he received it, he may absolve himself from the duties of a common carrier by delivering it to the true owner.

2. When a common carrier delivers goods to one other than the consignee or consignor, he does so at his peril, and it devolves upon him to prove that he has delivered them to the real owner.

3. Goods were delivered to an express company, marked "C. O. D.,' to be carried to the consignee. The consignee paid the express charges but refused to receive the goods, and directed the company to return them to the consignor. The consignor brought suit against the consignee, and recovered a judgment for the value of the goods, but in the meantime, after a verdict was rendered in favor of the consignor, and before judgment was rendered thereon, the express company, by direction of the consignor's attorney, returned the goods to the consignor. The consignee never countermanded his directions to the company to re-ship to the consignor. When final judgment was rendered, the consignee brought an action of trover against the company to recover the value of the goods, without offering to pay the $250: *Held,* that the consignee had no right of action against the company.

4. In such case, if the consignee had notified the company that he had been sued for the value of the goods, and required it to hold them, and not deliver to the consignor until the litigation ended, it seems that a different question would be presented; but it was not the duty of the company to seek the owner, nor was it its duty, unasked and unwarned, to seek to protect the contingent future interests of the consignee.

APPEAL from the Circuit Court of Knox county; the Hon. ARTHUR A. SMITH, Judge, presiding.

Messrs. M. D. COOKE & SON, and Messrs. DOUGLASS & HARVEY, for the appellant.

Messrs. WILLIAMS, McKENZIE & CALKINS, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

It appears that Grismer & Buxbaum, of Chicago, in the month of February, 1874, shipped Robert Greenhalgh, of Galesburg, a box of goods, marked "C. O. D. $250," by the American Express Company. The goods were duly received by the agent at the latter named place, and offered to the consignee and the money demanded, but he refused to receive or pay for them, but paid the express charges. He requested the express company to return the goods to the consignors.

The consignors subsequently brought suit against the consignee, to recover the value of the goods, at the March term, 1874, of the county court of Knox county. The case was tried by the court and a jury on the 13th day of August following. the trial resulting in a verdict in favor of plaintiffs. A motion for a new trial was entered, but it was overruled on the 21st of that month.

On the 14th of August, the day after the jury found the verdict, the company, under the directions of the attorney for the consignors, re-shipped the goods, and sent them back to Grismer & Buxbaum, and the package was, on the 15th, delivered to and received by them. About the 24th day of the same month, appellee demanded the goods of the company, without offering to pay the $250 charges required by the consignors to be paid before they should be delivered. The demand not having been complied with, Greenhalgh brought trover to recover the value of the goods.

On the trial in the court below, it was admitted that the judgment recovered in the county court gave absolute title

to the goods in controversy to Greenhalgh. On that trial by the court and a jury, a verdict was rendered in favor of the plaintiff, and against the defendant. for the value of the goods, and the court, after overruling a motion for a new trial, at the same time rendered judgment on the verdict, and defendant appeals to this court. and asks a reversal.

Appellee, in urging an affirmance, lays great stress upon the concession that the recovery by Grismer & Buxbaum of the judgment in the county court vested the absolute title of the goods in appellee. We fail to see, even if the proposition is true, which we do not now determine, as this record does not present the question, what pertinency that has to the question of liability of appellant to pay for the goods. The goods had been returned to and received by Grismer & Buxbaum six days before the judgment was rendered. If appellee was only vested with the absolute title in the goods by the rendition of the judgment, then he did not have such a title whilst the goods were in the possession or under the control of appellant; and if he thus became invested with such a right, it was as against the consignors, who then had the goods, and that by no means of which we are aware gave a right of recovery against the company.

It is also urged that the agent of the company at Galesburg knew of the suit, and should have held the goods until he knew how it finally terminated; that he, in fact, knew of the verdict before he returned the goods. Suppose he did: appellee had given him orders to return them, and they had not been countermanded; and when the attorney for the consignors gave similar orders, the agent must have supposed, as he had a right to, that, as he had such orders from both parties, he was fully justified in obeying the orders. Appellee took no steps to inform appellant that he had changed his mind, and was ready or willing to receive the goods, or that he looked to it to retain the goods until the termination of the litigation. If he had supposed that the commencement of the suit gave him unconditional title, it is strange that he

made no demand of the goods pending the litigation; but we apprehend, from his conduct, that he had no such supposition.

Conceding, then, that the recovery of the judgment vested absolute title in the appellee, and that it is the duty of a bailee to deliver property to the true owner. without reference to the person from whom he received it, the company did, according to the theory of appellee's counsel. deliver it to the true owner. Until the recovery of the judgment, it is not contended that the title to the property was in appellee, or in any one else but the consignors.

It was not the duty of appellant to seek the owner, nor was it its duty, unasked or unwarned, to seek to protect the contingent future interests of appellee. It had no right to intermeddle with the private affairs of the parties to that litigation. Had appellee notified the company that he was sued for the price of the goods. and required it to hold the goods. and not deliver them to the consignors until the litigation ended, then it is probable that a very different question would have arisen. A common carrier may, usually, deliver the goods to the consignee on the terms specified, or if refused by the consignee, he may return them to the consignor, or if the title has changed after receiving them, or if neither consignor nor the consignee had title to the property when he received it, he may absolve himself from the duties of a common carrier by delivering them to the true owner; but when he delivers to another than the consignee or consignor in the manner we have seen he may, he does so at his peril. In such case, it devolves upon him to prove that he has delivered to the real owner.

We think the evidence wholly fails to make out a case, and the court below erred in refusing to grant a new trial, and the judgment must be reversed and the cause remanded.

*Judgment reversed.*